Our final case for today is United States v. Downey. Mr. Mullins. May it please the Court, my name is Brian Mullins. I represent Connie Downey on his appeal of two of the conditions of his supervised release. We are arguing that two of those conditions amount to greater deprivations of liberty than is necessary to achieve the purposes of sentencing and therefore violate Section 3583. Maybe we should start with waiver before you get into the conditions because the government argues that after the district court, not once but twice, asked counsel if there were any objections to supervised release, counsel twice says no. And obviously we know a waiver is an intentional relinquishment. It's not just an accidental, oops, I forgot to think about this. But why doesn't this satisfy the criteria for waiver? Well, there's no evidence that there is a strategic reason to not object. And so that's another aspect of the analysis. Also, prior cases have held that simply... It's one of those things that helps us infer whether there is kind of indirect evidence of intentional relinquishment. If no one in their right mind would have relinquished the point for a strategic reason, then you can assume that it was an accident. But when you have the lawyer, we've tried to encourage judges to put these questions out in a very clear and focused way. And the lawyer doesn't raise anything. So it's a problem, isn't it? Well, it hasn't been found to be a problem in other cases. In the James James case, a similar statement was made to the district court's question, were there any objections? Defense counsel said no, and that was found not to be waiver. But wasn't that an open-ended question? I thought the question here was focused on supervised release terms in particular. It was focused on the conditions as a whole. It wasn't focused on any specific condition. It didn't go down, you know, one, two, three. I understand that. It doesn't need to, though, does it? No, it doesn't need to. But I think that would be a further argument in favor of waiver if there were questions as to each condition, or if each condition were read aloud. I don't believe each condition was read aloud. It was just incorporated. People frequently waive that, though. Do you think that's not waivable? A lot of defendants don't want to go through some lengthy reading. It's waivable. It's waivable, but that wasn't what happened here, I don't believe. And it is, again, that would be further evidence that waiver had occurred, and that didn't occur here. The general rule is that waiver is disfavored and should be construed liberally in favor of the defendant. So I think this is probably fair to call a close call. But where the rule is that waiver rules are construed in favor of the defendant, there doesn't appear to be a strategic basis for not raising the objection. And the response was no by a defense counsel. I think the tie goes to the defendant in that case. Oh, sorry. I'm sorry. I will defer to the court. I think we have your point on that. But isn't the reasonable location condition consistent with our decision in U.S. v. Henry in which we explicitly indicated that limiting the location to one that was reasonable would address the potential for abuse? Well, I think the... Especially on a plain error standard, because at worst, I mean, we would have at least forfeiture, even if we didn't have waiver. So there is a higher bar. We do concede forfeiture, and our problem with the language is that it gives full discretion to the probation office. But Mr. Downey in particular, as I understand it, you know, wasn't planning on working. Didn't he say he was going to sit in his room and watch TV? He's an older man. He is, and I think... He's not going to have a workplace that could be disrupted by a probation officer visit. That seems like the realm of fantasy to me. The workplace issue is probably less likely, but the possibility that he will be required to travel to his probation office we believe is likely, and I think in his case in particular is relevant and imposes that burden, that undue burden on him, because he will likely... Doesn't that go into the reasonableness calculation? It would go into the calculation. Now here, Mr. Downey will likely live in Waukegan. The probation offices in the Northern District are in Chicago, Lyle, and Rockford, so the closest probation office would be 50 miles, at least 50 miles. But they travel around. Correct, and that's... We're not objecting to a condition where the probation office meets Mr. Downey. The objection is that giving the probation office complete discretion might allow the probation office to require him to travel to the probation office itself, which could be an undue burden for Mr. Downey. Now, if that would arise and he had a problem with it, certainly he could go back to the district court and ask the court to reconsider those conditions, but he might risk violating a condition of his supervised release and starting that whole process. So what we're asking the court to do is to remand to just clarify that condition and add the language that we have suggested. The 104-208 issue? I'm going to talk to your opponent about that. So you're not asking for a full sentencing on remand. You're just asking for a focus on these two conditions of supervised release? Well, we did ask for a full resentencing in the brief. I know. I was finding out whether you're still asking for it. It sounded like you weren't. I think a partial remand would do the job. Help me with this. Under a natural reading of the drug testing conditions, isn't it clear that the maximum number of drug tests are 104? The mandatory condition provides a limit of 104 per year of supervised release, and nothing in that is qualified as to whether that testing is done in a drug treatment program or otherwise. How then would it be read as allowing 104 more tests than the tests allowed as part of the treatment program? Well, if that is the natural reading, we don't have an objection to that condition. We don't believe it's necessarily the natural reading. We agree with the court's interpretation, but I think another possible reading would be that it does allow up to 208 tests when the conditions are combined. About four a week throughout the year. Correct, including weekends, taking weekends out of the equation. Well, it's four a week, whether it's out of five days or seven days, it's four a week. And so just that possibility, I don't think any of the parties are suggesting that is appropriate. It's just a question of how do we make sure that it's not at some later date interpreted that way. Are the drug tests in the substance abuse program done at the order of the probation officer or at the discretion of the persons running the substance abuse program? I think it's changed since I was there. It may be ultimately the probation office's discretion, but I'm not aware of the specifics in the Northern District. Maybe your friends will ask. If you'd like to save just a bit for rebuttal. Yes, thank you. Thank you. Mr. Vandenberg. May it please the court. Cornelius Vandenberg on behalf of the United States. I'd like to begin with the condition involving defendants meeting with this probation officer at a reasonable location. This court has already upheld that language in our more. And as the court said, suggested this exact language in Henry, the reasonable location modifier. Therefore, the district court did not plainly err by imposing that condition. If there are no questions on that, I'd like to speak to the issue of the drug treatment condition. So the drug treatment condition, apparently there's an ambiguity there. And I understood from your brief that it's the government's position that these two conditions taken together don't accumulate. They just repeat that 104 tests per year is the ceiling. So two per week, not four per week. Obviously, it wouldn't have to be that many, but it can't go beyond that many. So since there's at least some possibility a probation officer might read this the way that Mr. Mullins reads it, what do we do? Do we send this back to the district judge to fix it? Does an opinion from this court saying that the cap, as Judge Rovner just articulated it, is 104, no matter whether they're for treatment or for supervision or for monitoring or for whatever purpose. It just can't be more than 104. How do we approach that? Well, Your Honor, I- Since I'm taking it that you don't say that it's 208. If I'm wrong about that, correct me. No, that's correct, Your Honor. We do not contend that this equals 208. Each of the conditions impose a cap, and they impose the identical cap. But it's not 104 for treatment and 104 for monitoring. That's correct. That's correct. One reiterates the other, that this is where the max. And in the event that a probation officer was even going, I don't think you'd have to wait until the 105th test. I think if it got to a point where a probation officer was even on the schedule of going over 104, the defendant would have recourse to return to the district court during the time of his supervised release and to state that this is unreasonable. But why shouldn't it be fixed now, since we all agree that it's wrong? Fifty-seven months minus time for good time isn't a particularly long sentence. So inviting a whole new round of procedures seems wasteful. I don't think that we necessarily agree that it is unclear. I think the appellant, as they stood up here, said that the plain interpretation, as the government contends, is that these are both meant to cap it. You are correct that there could be ambiguity where someone could read it that way. If the court were to find that, the court wouldn't necessarily have to remand it. That is something that this court could modify on its own, since it's not a substantial portion of the supervised release condition that would affect the sentencing package. So I believe the court would be able to take that recourse as opposed to remanding it for that reason. Is there any drug testing done that would not involve urine testing, such as hair or blood? And if so, could the provisions be read so, in that case, to allow more than 104 tests, as long as only 104 are urine testing? Well, I think, Your Honor, in that case, if there was, let's say, a blood or hair sample testing, then in that case that would still be capped under the mandatory condition, which limits up to 104 periodic tests for use of a controlled substance. It doesn't specify urine testing, and therefore it would be capped out there. Well, actually, the discretionary condition refers to urine testing. Yeah, it does. Whereas a mandatory condition refers generally to drug testing. So, I mean, that's the, you know, why I'm asking. Your Honor is absolutely correct that there is different wording. What I'm saying is that because the blood or hair sampling isn't even provided for in the discretionary condition, which is limited to urine testing, that it would only conceivably be tracked to the mandatory condition. And therefore, again, if you were on track for over 104 blood and hair samples, you would be going above the cap of the mandatory condition 6, which is inclusive of all types of testing. No, but Judge Rovner is making a good point. You know, you could be having blood tests, which actually will reveal certain kinds of substance abuse issues that a urine test won't. You know, suppose you had 50 blood tests and you'd had, you know, 100 urine tests, that is to say less than 104 urine tests. So the 100 urine tests come under 9, the 50 blood tests come under 6. Why is that not possible? Because I don't believe that they come under individual portions. Because all it says is a drug test. It doesn't say what kind. Yes, Your Honor. But I think when the defendant sits down and submits to a drug test, there is no indication at that point that you're doing this because of mandatory condition 6 or because of discretionary condition 9. The drug test is considered a drug test. And again, since the two have caps that essentially reference each other, identical caps, I think it's just interpreted, again, and there is a presumption that probation officers will interpret these conditions in a reasonable manner. I believe that it's interpreted at that time as counting towards the 104 cap of mandatory condition 6. Mr. Vandenberg, on the actual form, which I think is a docket entry 34, it looks like it's a revision as of August 2nd, 2016. Henry case from Judge Posner comes down February 17th of 2016. Do you know if the form was revised as a result of the Henry opinion or one way or the other? I don't know for a fact that it was revised with respect to that. I know Armour predated Henry and that at that point it was found to be the court upheld Armour. And I know that subsequent to Henry in, I apologize, in another case, this court, oh, I'm sorry, that's why I'm going back, in the case of Carson, which was in 2016, this court acknowledged that Henry was in fact proposing that, that it was proposing a reasonable modifier to it. So whether or not the form was in reference to that, I know Carson was in reference to that and acknowledging that that's what Henry was seeking, or at least one solution to the problem identified in Henry. Thank you. If I could speak as to the issue of waiver, the government contends that both these conditions were reasonable. It also contends that the defendant waived any argument that they were unreasonable. Here the defendant actively abandoned objection, and we believe that that, we can infer that that is consistent with the defendant's strategy in this case, to argue that the defendant needed treatment, not incarceration. That was a recurring theme throughout the entire sentencing of this defendant, and the fact that the conditions that we're talking about here, which relate to ensuring that the defendant was not on drugs that he was receiving. It's expensive. The government tends to charge people for these tests, paying for four tests, or even two tests a week. Is the government going to underwrite this? Because Mr. Downey is indigent. Mr. Downey is indigent, and as a result, he would not be charged for these tests. So the government picks up the tab for all of this. Yes, that's correct. As the defendant acknowledges, this court has repeatedly found that abandoning objection to supervised release conditions at sentencing, when given ample notice through the PSR, which in this case was several weeks ahead of the sentencing, that that can constitute waiver. If there are no further questions, in conclusion, for all the reasons set forth today and in the brief, the government would respectfully ask that this court affirm the district court sentence. Okay, thank you. Anything further, Mr. Mullins? We'll give him a full minute. I think the government conceding that the conditions with respect to the number of drug tests that are ambiguous, I think that requires at least a partial remand, because these conditions do have the force of criminal penalties, given that somebody can be incarcerated for violating the conditions. So I think that concession that they are ambiguous does require a partial remand to clarify those conditions. And just returning to waiver, we cited these cases in our brief. But just to repeat, there are similar comments were made. The court asked, are there any objections? The response was just a general no. To the guideline enhancement, that was in seals, and that was a case from 2016 where it was found not to be waived. Criminal history, that was from Gill, also a case from 2016. And then restitution, a case from 2017. So where there is no intentional relinquishment, where at least it's not clear from the record and there's no strategic basis, waivers should not be found. All right. Well, thank you very much. Thanks to both counsel. We will take the case under advisement. And the court will be adjourned.